**<u>Exhibit 1</u>**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NINE POINT ENERGY HOLDINGS, INC.<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 21-10570 (MFW)<br><br>(Jointly Administered) |
| NINE POINT ENERGY HOLDINGS, INC., and<br>NINE POINT ENERGY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CALIBER MEASUREMENT SERVICES LLC,<br>CALIBER MIDSTREAM FRESH WATER<br>PARTNERS LLC, and CALIBER NORTH DAKOTA, LLC,<br><br>Defendants. | Adv. Proc. No. 21-50243 (MFW) |

## CALIBER'S OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Curtis S. Miller (No. 4853)
Taylor M. Haga (No. 6549)
Nader A. Amer (No. 6635)
1201 N. Market St., 16th Floor
Wilmington, DE 19899-1347
Telephone: (302) 658-9200

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Perez (admitted *pro hac vice*)
Brenda L. Funk (admitted *pro hac vice*)
Tristan M. Sierra (admitted *pro hac vice*)
700 Louisiana, Suite 1700
Houston, TX 77022-2784
Telephone: (713) 546-5040

Edward Soto (admitted *pro hac vice*)
Lauren Alexander (admitted *pro hac vice*)
Corey D. Berman (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100

*Counsel to Caliber Measurement Services LLC, Caliber Midstream Fresh Water Partners LLC, and Caliber North Dakota LLC*

Dated: April 16, 2021

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Nine Point Energy Holdings, Inc. (8331); Nine Point Energy, LLC (0717); Foxtrot Resources, LLC (6690); and Leaf Minerals, LLC (9522) (collectively, the "**Debtors**"). The Debtors' address is 1001 17th Street, 14th Floor, Denver, Colorado 80202.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS ................................................................................................2

I.      The Previous Action ...........................................................................................2

II.     The Amended Agreements ...................................................................................3

III.    The Debtors' Chapter 11 Cases ..........................................................................5

LEGAL STANDARD.......................................................................................................7

ARGUMENT ..................................................................................................................7

I.      Counts IV and V of the Complaint Are Not Ripe for Summary Judgment Because they Seek Summary Judgment on a Complaint for Declaratory Judgment on Issues to Be Decided by the Court in the Main Bankruptcy Case ...................................8

II.     Plaintiffs Are Not Entitled to Summary Judgment on Count IV Because Caliber's Interests in Real Property Are Not Executory and Cannot Be Rejected...........................13

A.     *Caliber's Interests in Real Property Are Not Executory* ...................................13

B.     *Caliber's Interests Must Survive Rejection Because Rejection Is Breach, Not Rescission*...........................................................................................................16

III.    Plaintiffs Are Not Entitled to Summary Judgment on Count V ........................19

A.     *Plaintiffs Are Not Entitled to Summary Judgment on Section 363(f)(4) of the Bankruptcy Code*...................................................................................................19

B.     *Plaintiffs Are Not Entitled to Summary Judgment on Section 363(f)(5) of the Bankruptcy Code*...................................................................................................20

CONCLUSION...............................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 523 E. Fifth St. Housing Pres. Dev. Fund Corp.*,
  79 B.R. 568 (Bankr. S.D.N.Y. 1987) .......................................................................24

*Aetna Cas. & Sur. Co. v. Quarles*,
  92 F.2d 321 (4th Cir. 1937) ...................................................................................10

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
  300 U.S. 227 (1937) .................................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................7

*Armstrong v. Dakota W. Bank of Bowman (In re Arithson)*,
  175 B.R. 313 (Bankr. D.N.D. 1994) ......................................................................22

*In re Badlands Energy, Inc.*,
  608 B.R. 854 (Bankr. D. Colo. 2019) ....................................................................24

*In re Balco Equities Ltd.*,
  323 B.R. 85 (Bankr. S.D.N.Y. 2005) .....................................................................12

*Banning Lewis Ranch Co., LLC v. City of Colo. Springs, Colo. (In re Banning Lewis Ranch Co., LLC)*,
  532 B.R. 335 (Bankr. D. Colo. 2015) ....................................................................24

*In re Bon-Ton Stores, Inc.*,
  Case No. 18-10248 (MFW) (Bankr. D. Del. 2018) ................................................16

*In re CB Holding Corp.*,
  448 B.R. 684 (Bankr. D. Del. 2011) ......................................................................16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................7

*Chafin v. Chafin*,
  133 S.Ct. 1017 (2013) ............................................................................................11

*In re Daufuskie Island Properties, LLC*,
  431 B.R. 626 (Bankr. D.S.C. 2010) .......................................................................12

*Matter of Davis*,
    3 F.3d 113 (5th Cir. 1993) .................................................................................18

*In re DeCelis*,
    349 B.R. 465 (Bankr. E.D. Va. 2006) ....................................................................12

*Doda v. Waste Mgmt., Inc.*,
    Civil Action No. 17-604-CFC, 2019 WL 4671190 (D. Del. Sept. 25, 2019) ............8

*DSS, Inc. v. MPC-G, LLC*,
    Adv. No. 09-51001 (PJW), 2010 WL 148180 (Bankr. D. Del. Jan. 13, 2010).........9

*Eakman v. Robb*,
    237 N.W.2d 423 (N.D. 1975) ...............................................................................18

*In re Extraction Oil & Gas*,
    622 B.R. 608 (Bankr. D. Del. 2020) .......................................................14, 15, 19

*Feland v. Placid Oil Co.*,
    171 N.W.2d 829 (N.D. 1969) ...............................................................................15

*In re Ferris Properties, Inc.*,
    Case No. 14-10491 (MFW), 2015 WL 4600248 (Bankr. D. Del.
    July 30, 2015)......................................................................................................21

*Gouveia v. Tazbir*,
    37 F.3d 295 (7th Cir. 1994) ...........................................................................21, 24

*In re Haskell L.P.*,
    321 B.R. 1 (Bankr. D. Mass. 2005) ...................................................................6, 21

*In re Hruby*,
    512 B.R. 262 (Bankr. D. Colo. 2014) ....................................................................18

*JJCK, LLC v. Project Lifesaver Int'l*,
    No. 10- 930-LPS, 2011 WL 2610371 (D. Del. July 1, 2011)............................8, 13

*In re Julien Co.*,
    117 B.R. 910 (Bankr. W.D. Tenn. 1990).................................................................12

*Kennedy v. Medicap Pharmacies, Inc.*,
    267 F.3d 493 (6th Cir. 2001) ...............................................................................18

*Kittleson v. Grynberg Petrol. Co.*,
    876 N.W.2d 443 (N.D. 2016) ...............................................................................22

*In re Klein*,
    218 B.R. 787 (Bankr. W.D. Pa. 1998) ...................................................................17

*Krenz v. XTO Energy, Inc.*,
    890 N.W.2d 222 (N.D. 2017) ..............................................................15, 19, 23

*In re Lazy Days' RV Ctr. Inc.*,
    724 F.3d 418 (3d Cir. 2013).............................................................................11

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...........................................................................................7

*Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*,
    Civil Action No. 3:12CV00049, 2014 WL 652253 (W.D. Va. Feb. 19, 2014).........9

*In re Metroplex on the Atl., LLC*,
    545 B.R. 786 (Bankr. E.D.N.Y. 2016) ..............................................................12

*Miller v. Schwartz*,
    354 N.W.2d 685 (N.D. 1984) ...........................................................................15

*Mission Prod. Holdings, Inc. v. Tempnology*,
    LLC, 139 S. Ct. 1652 (2019) ....................................................................... *passim*

*Nantt v. Puckett Energy Co.*,
    382 N.W.2d 655 (N.D. 1986) ...........................................................................22

*In re Octagon Roofing*,
    123 B.R. 583 (Bankr. N.D. Ill. 1991) ...............................................................12

*In re Ortiz*,
    400 B.R. 755 (C.D. Cal. 2009) .........................................................................18

*In re Oyster Bay Cove, Ltd.*,
    161 B.R. 338 (Bankr. E.D.N.Y. 1993), *aff'd*, 196 B.R. 251 (E.D.N.Y. 1996) .......24

*In re Phillips*,
    No. 12-09022-8-DMW, 2015 WL 4040185 (Bankr. E.D.N.C. June 30, 2015).....................12

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)............................................................................................7

*In re Revel AC, Inc.*,
    802 F.3d 558 (3d Cir. 2015)..............................................................................20

iv

*In re Sabine Oil & Gas Corp.*,
  547 B.R. 66 (Bankr. S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017),
  *aff'd*, 734 F. App'x 64 (2d Cir. 2018)..............................................................11, 14

*In re Sabine Oil & Gas Corp.*,
  567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018)..................24

*Sanford v. Sanford*,
  301 N.W.2d 118 (N.D. 1980) ........................................................................15, 16

*Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*,
  872 F.2d 36 (3d Cir. 1989)..................................................................................10

*Sir Speedy, Inc. v. Morse*,
  256 B.R. 657 (D. Mass. 2000) .............................................................................18

*Sofi Classic S.A. de C.V. v. Hurowitz*,
  444 F.Supp.2d 231 (S.D.N.Y. 2006).....................................................................10

*In re Southland Royalty Co. LLC*,
  623 B.R. 64 (Bankr. D. Del. 2020) ..................................................12, 14, 15, 20

*In re Spooner*,
  No. 11-31525, 2012 WL 909515 (Bankr. N.D. Ohio Mar. 16, 2012) ....................18

*Thompson v. City of Olympia*,
  No. 3:18-CV-05267-RBL, 2019 WL 3287822 (W.D. Wash. July 22, 2019)............9

*In re Trans World Airlines, Inc.*,
  No. 01-0056 (PJW), 2001 WL 1820325 (Bankr. D. Del. Mar. 27, 2001), *aff'd*
  *sub nom. In re Trans World Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003) ...............12

*Triangle USA Petrol. Corp. v. Caliber Measurement Servs. LLC*,
  Case No. 16-51023 (Bankr. D. Del. 2016) ...................................................2, 3, 14

*Matter of Udell*,
  18 F.3d 403 (7th Cir. 1994) ................................................................................18

*Wachter Dev., Inc. v. Martin*,
  931 N.W.2d 698 (N.D. 2020) ..............................................................................23

*In re Washington Mut., Inc.*,
  No. 08-12229 MFW, 2012 WL 4755209 (Bankr. D. Del. Oct. 4, 2012)..................9

*Wheeler v. Southport Seven Planned Unit Dev.*,
  821 N.W.2d 746 (N.D. 2012) ........................................................................19, 23

**Statutes**

11 U.S.C. § 363(f)(5) .............................................................................................. *passim*

11 U.S.C. § 365 ....................................................................................................... *passim*

11 U.S.C. § 1107(a) ..................................................................................................... 6

11 U.S.C. § 1108 .......................................................................................................... 6

H. Williams and C. Meyers, Oil and Gas Law ........................................................ 15

**Other Authorities**

Fed. R. Civ. P. 56 ..................................................................................................... 1, 7

Fed. R. Bankr. P. 6006 ............................................................................................... 11

Fed. R. Bankr. P. 7001(2) ........................................................................................... 11

Fed. R. Bankr. P. 7056 ................................................................................................. 1

Fed. R. Bankr. P. 9014 ............................................................................................... 11

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, Caliber Measurement Services LLC, Caliber Midstream Fresh Water Partners LLC, and Caliber North Dakota LLC (together, "**Caliber**"), by and through their attorneys, file this Opposition (the "**Opposition**") to Plaintiffs' Second Motion for Partial Summary Judgment (the "**Second MSJ**"), D.I. 15, dated March 26, 2021, as follows:

## PRELIMINARY STATEMENT

The Debtors' chapter 11 proceedings are really a two-party dispute rather than a multi-faceted restructuring.  The bankruptcy, and this related adversary proceeding, are, essentially, bare attempts to shift value from Caliber to Nine Point Energy, LLC ("**NPE**")–value that is rightfully Caliber's after the parties fought, negotiated, and settled before this very Court a little over three years ago.

In this renewed controversy, Plaintiffs filed duplicative requests for relief (via motions and a declaratory judgment action) to reject certain of Caliber's contracts and sell the Debtors' assets free and clear of Caliber's interests in an attempt to tilt the procedural playing field.  Instead of setting the already-filed Motion to Reject for hearing and asking the Court to hear all objections to the Debtors' proposed Sale Motion on June 17th (the already-set hearing date), NPE now seeks to have the Court prematurely decide cherry-picked legal issues raised in Counts IV (Rejection) and V (Sale Free and Clear) of their Complaint on summary judgment.  Counts IV and V, are not, as pleaded by the Plaintiffs, the threshold issues in the bankruptcy cases.  In reality, the direction the Debtors will be required to take on the Motion to Reject and Sale Motion will be determined by the successful bidder for the Debtors' assets, not the Debtors.  Accordingly and in support of

1

judicial economy, the limited rejection and sale issues raised in the Complaint are not ripe for decision until the Debtors have chosen a successful bidder for their assets and the full picture of the prospects for a sale of the Debtors' assets comes into view.

Just as NPE is not entitled to summary judgment on Counts II and III of the Complaint,[2] NPE is also not entitled to summary judgment on Counts IV and V.  Neither Count is ripe for summary judgment, NPE is incorrect on the law regarding the effect of rejection on the ███████ and Caliber's other interests, and NPE is not entitled to relief, especially on a summary judgment basis prior to the Debtors' bid deadline, under section 363(f) of title 11 of the United States Code (the "**Bankruptcy Code**").  For these and other reasons more fully set forth below, Plaintiffs' Second MSJ should be denied.

## STATEMENT OF FACTS

### I.    The Previous Action

More than four years ago, after filing for chapter 11 protection, Triangle USA Petroleum Corporation ("**TUSA**") filed an adversary proceeding[3] against Caliber seeking a declaratory judgment that the following agreements, in relevant part, do not contain covenants running with the land: "[A] certain amended and restated Midstream Services Agreement, dated September 12, 2013, between TUSA, as producer, and Caliber North Dakota LLC ("**Caliber North Dakota**"), as gatherer, as amended by Amendment No. 1 thereto, dated June 16, 2015," (the "**2013 Gas and Water MSA**"), Caliber's Opp'n to NPE's First Mot. Summ. J. Ex. A, D.I. 38; a "certain amended and restated Midstream Services Agreement (Crude

---

[2] *See* Caliber's Opp'n to NPE's First Mot. Summ. J. [D.I. 38].
[3] *Triangle USA Petrol. Corp. v. Caliber Measurement Servs. LLC*, Case No. 16-51023 (Bankr. D. Del. 2016) (the "**Previous Action**").

Oil), dated September 12, 2013, between TUSA, as producer, and Caliber North Dakota, as gatherer, as amended by Amendment No. 1 thereto, dated June 16, 2015," (the "**2013 Crude Oil MSA**") (together, the "**2013 MSAs**"), Caliber's Opp'n to NPE's First Mot. Summ. J. Ex. B, D.I. 38; a "certain Gathering Services Agreement (LACT Units), dated September 12, 2013, between TUSA, as producer, and Caliber Measurement" (the "**LACT Agreement**").  Compl. For Declaratory J. ¶¶ 15(a)-(f), D.I. 3, Previous Action (the "**Previous Action Complaint**").

On December 7, 2017, NPE's predecessor, TUSA, and Caliber North Dakota (among other Caliber-related entities), entered into a letter of intent, with an attached term sheet, laying out the parameters of an agreement settling the open issues among the parties, including that the ▮▮▮▮▮▮ contained in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *See* Caliber's Opp'n to NPE's First Mot. Summ. J. Ex. C, D.I. 38.  The LOI and Term Sheet led to a formal settlement agreement between Caliber and NPE on January 1, 2018 (the "**Settlement Agreement**").  *See* Caliber's Opp'n to NPE's First Mot. Summ. J. Ex. D, D.I. 38.

The Settlement Agreement, in turn, had attached to it Exhibits A, B, and C, which were forms of the Second Amended and Restated Midstream Services Agreement (Crude Oil), the Second Amended and Restated Midstream Services Agreement, and the Amended and Restated Gathering Services Agreement, each of which was to be entered into by the parties contemporaneously with the Settlement Agreement.  *See* Settlement Agreement § 4.01.

## II.    The Amended Agreements

Pursuant to the Settlement Agreement, NPE, as successor in interest to TUSA, and Caliber North Dakota subsequently entered into a Second Amended and Restated Midstream Services Agreement, dated January 1, 2018 (the "**Second Amended Gas and Water MSA**") (attached as

Ex. B to the Adversary Proceeding Compl.), a Second Amended and Restated Midstream Services Agreement (Crude Oil), dated January 1, 2018 (the "**Second Amended Crude Oil MSA**") (attached as Ex. C to the Adversary Proceeding Compl.) (together with the Second Amended Gas and Water MSA, the "**2018 MSAs**"), and an amendment, Amendment No. 1, to the NGL Handling Agreement.  Adversary Proceeding Compl. ¶¶ 24(a), (b), (e).  NPE and Caliber Measurement, via "that certain Amended and Restated Gathering Services Agreement, dated January 1, 2018" also amended the LACT Agreement (the "**Amended LACT Agreement**").  *Id.* ¶ 24(d).

The 2018 MSAs include: 1) a set of recitals in line with the parties' LOI, Term Sheet, and Settlement Agreement;[4] 2) substantively similar ▉▉▉▉▉ of "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ that were present in the prior iterations of the MSAs;[5] 3) provisions providing that each of NPE's ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉ ▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[4] *See* Recital F ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
[5] *Compare* 2013 MSAs *with* 2018 MSAs § 10.1(a).
[6] *See* 2018 MSAs § 10.1(a)(iii).
[7] *See id.* ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

███████████████████████████████████████████

███████████████

In connection with the creation of covenants running with the land (referred to as the ████████, NPE conveyed other interests in real property to Caliber (collectively with the ████████, "**Caliber's Interests**").  Section 14.1 of the 2018 MSAs describes these other interests conveyed to Caliber:



*See* 2018 MSAs § 14.1 (emphasis added).

## III.    The Debtors' Chapter 11 Cases

On March 15, 2021 (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

---

[8] *See id.* ████████████████████████████████████████

Bankruptcy Code.  On the same date, Debtors filed *the Debtors' Complaint for Declaratory Judgment* [Adv. D.I. 2] (the "**Complaint**").

The Debtors are currently seeking to reject certain of its contracts with Caliber.  *See Motion of Debtors for an Order Authorizing Debtors to Reject Certain Executory Contracts with Affiliates of Caliber Midstream Partners, L.P.* [D.I. 24 (Sealed) and 127 (Redacted)] (the "**Motion to Reject**").  As of the date of this Opposition, neither an objection deadline nor a hearing date has been set for the Motion to Reject.  The Motion to Reject seeks rejection of all NPE's contracts with Caliber (the "**Caliber Contracts**") while the Complaint seeks relief with regards only to Caliber's Interests.

The Debtors are also currently undertaking a sales process for their assets.[9]  The Debtors have agreed to a Stalking Horse Agreement [D.I. 233] with the agents to their prepetition and DIP Lenders (the "**Lenders**") whereby the Lenders will credit bid for the Debtors' assets.  The deadline for other interested parties to submit bids is June 11, 2021 and the sale hearing, at which the Debtors will seek approval of a sale, is set for June 17, 2021.  Sale Motion Order at 5-6.  Among the items that interested parties must specify in their bids is the proposed treatment of the 2018 MSAs (and other Caliber contracts) and the list of Debtors' assets subject to the bid.  *Id.* at 9–12.

---

[9] *See Motion of Debtors for Entry of Orders (A)(I) Authorizing and Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, and (IV) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases and (B) Approving (I) The Sale of Substantially All or Any Portion of the Debtors' Assets Free and Clear and (II) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases* [D.I. 28 (Sealed) and 29 (Redacted)] (the "**Sale Motion**"); and the *Order (I) Authorizing and Approving Bidding Procedures, (II) Scheduling an Auction and a Sale Hearing, (III) Approving the Form and Manner of Notice Thereof, and (IV) Establishing Notice and Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "**Sale Motion Order**") [D.I. 239].

In the Motion to Reject and the Sale Motion, the Debtors are seeking identical, and additional, relief to that sought in Counts IV and V of the Complaint. The Sale Motion seeks a sale free and clear of all interests set forth in the Stalking Horse Agreement. Count V of the Complaint seeks the same relief with regards only to Caliber's Interests in Debtors' assets.

## **LEGAL STANDARD**

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party has carried its burden, the non-movant must then "come forward with specific facts showing that there is a genuine issue for trial." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## **ARGUMENT**

NPE's request for summary judgment on Counts IV and V should be denied because the "legal" issues raised in Counts IV and V are not ripe for summary judgment as they are identical to the issues raised in NPE's Motion to Reject and Sale Motion and seek rulings from this Court on hypothetical facts and legal issues. In addition, summary judgment as to Counts IV and V must be denied because (1) Caliber's Interests are not executory and cannot be rejected; (2) rejection of the Caliber Contracts would merely constitute a breach of them under Supreme Court precedent,

which would not allow NPE to unilaterally rescind Caliber's Interests; (3) NPE has not proven the existence of a *bona fide* dispute as to Caliber's Interests; and (4) under the plain language of the 2018 MSAs and North Dakota law, Caliber cannot be compelled to accept money damages in lieu of equitable relief.

## I.     Counts IV and V of the Complaint Are Not Ripe for Summary Judgment Because they Seek Summary Judgment on a Complaint for Declaratory Judgment on Issues to Be Decided by the Court in the Main Bankruptcy Case

Counts IV and V seek nothing more than what NPE is seeking in two motions in its main bankruptcy proceeding.  This Court will necessarily decide Counts IV and V in deciding the Motion to Reject and the Sale Motion.[10]  Moreover, Plaintiffs are asking this Court to enter summary judgment on hypothetical facts.  Accordingly, Counts IV and V are not ripe for summary judgment and should also be dismissed.

In the interests of judicial economy, it is proper for the Court to dismiss declaratory judgment counts when such counts are duplicative of the relief sought in the main bankruptcy case. *See, e.g.*, *See JJCK, LLC v. Project Lifesaver Int'l*, No. 10- 930-LPS, 2011 WL 2610371, at *6 (D. Del. July 1, 2011) ("If the declaratory judgment claim bears 'complete identity of factual and legal issues' with another claim being adjudicated by the parties, the Court is within its discretion to dismiss the declaratory judgment action."); *see also Doda v. Waste Mgmt., Inc.*, Civil Action No. 17-604-CFC, 2019 WL 4671190, at *3 (D. Del. Sept. 25, 2019) ("I will dismiss these declaratory judgment counts because they are duplicative . . . of the relief Plaintiffs seek under § 256 and do not make available to Plaintiffs any form of relief not afforded by § 256"); *Metra*

---

[10] Caliber reserves its rights to object on any and all grounds to the Motion to Reject and Sale Motion on the dates set by the Court.  Caliber also reserves its rights to supplement this Opposition based on any amended Complaint or new arguments raised in Plaintiffs' response hereto.

*Indus., Inc. v. Rivanna Water & Sewer Auth.*, Civil Action No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014) ("[A] declaratory judgment serves no useful purpose when it seeks only to adjudicate an already-existing . . . claim."); *DSS, Inc. v. MPC-G, LLC*, Adversary No. 09-51001 (PJW), 2010 WL 148180, at *1 (Bankr. D. Del. Jan. 13, 2010) (dismissing numerous counts of plaintiff's complaint for declaratory judgment as duplicative "components of a constructive trust cause of action," explaining "[i]n the event this Court finds that an imposition of a constructive trust is warranted, it should not need to spend time re-establishing each component anew.").

Declaratory judgment is only appropriate where a "case of actual controversy" exists, and the case of actual controversy must be "definite and concrete, touching the legal relations of parties having adverse legal interests." *In re Washington Mut., Inc.*, No. 08-12229 MFW, 2012 WL 4755209, at *5 (Bankr. D. Del. Oct. 4, 2012) (citing *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41 (1937)). "The controversy must also be real and substantial as opposed to advising what the law would be upon a hypothetical state of facts." *Id.* (dismissing complaint for declaratory judgment that "in the event [D&O indemnity claims] are subrogated, those claims must be equitably subordinated" as not "ripe for judicial intervention"); *see also Thompson v. City of Olympia*, No. 3:18-CV-05267-RBL, 2019 WL 3287822, at *4 (W.D. Wash. July 22, 2019) ("Granting summary judgment on a hypothetical set of facts would be backwards . . . To apply the law before the factual landscape is solidified would amount to an advisory opinion.").

Here, NPE has filed a Motion to Reject the Caliber Contracts, and in deciding such motion, the Court will undoubtedly have to determine whether NPE can reject the Caliber Contracts notwithstanding Caliber's Interests—real covenants and interests—resulting from, and contained

in, such Agreements.[11]  Determining whether NPE can reject real property interests is a necessary component of deciding NPE's Motion to Reject.  Similarly, determining whether NPE can sell its assets free and clear of Caliber's Interests is a necessary component of deciding NPE's Sale Motion.  The Declaratory Judgment Act is not meant to be used "to interfere with an action which has already been instituted."  *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937).  NPE "seeks the resolution of legal issues that will, of necessity, be resolved in the course of the litigation of" the Motion to Reject and Sale Motion. *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F.Supp.2d 231, 249 (S.D.N.Y. 2006).

In addition, NPE's entire argument for summary judgment on Count IV depends on a hypothetical.  NPE argues that "*[i]f* the Caliber Contracts are rejected, the ██████ contained therein will be rejected as well."  Second MSJ at 10.  This hypothetical assumes not only that the Caliber Contracts can be rejected, but that the buyer of the Debtors' assets will elect to reject the Caliber Contracts (not a certainty), and that the Debtors will satisfy the other requirements of section 365 of the Bankruptcy Code.  Count IV is not seeking a determination of whether the Caliber Contracts contain a covenant running with the land (that is Count II), but rather, seeks a determination that they can be rejected ***notwithstanding*** any real property interests contained therein.  In ruling on NPE's Motion to Reject in the main bankruptcy case, the Court will decide

---

[11] As an initial matter, NPE incorrectly asserts that rejection of its agreements with Caliber will maximize the value of estate assets.  Not only is NPE's baseless, unsupported assertion incorrect, but it is also a disputed issue of material fact that cannot be determined on a motion for summary judgment.  As NPE admits in its second motion for summary judgment, a trustee must "demonstrate that rejection will benefit the estate."  *See* Second MSJ at 9 (quoting *Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 39–40 (3d Cir. 1989)).  Beyond unsubstantiated assertions, there has been no demonstration that rejection of NPE's agreements with Caliber will benefit the value of estate assets.  Whether NPE properly exercised its business judgment in seeking to reject the Caliber Contracts should be determined following an evidentiary hearing on NPE's Motion to Reject.

whether the Caliber Contracts can be rejected, notwithstanding the Caliber Interests. [12]  If the Court

denies the Motion to Reject or the Motion to Reject is withdrawn, then the decision Plaintiffs seek

here as to Count IV in this Adversary Proceeding would constitute nothing more than an advisory

opinion.  As the Third Circuit made clear, the Bankruptcy Court cannot "give opinions advising

what the law would be upon a hypothetical state of facts."  *See In re Lazy Days' RV Ctr. Inc.*, 724

F.3d 418, 421 (3d Cir. 2013) (quoting *Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013)).  The

Bankruptcy Court's opinion must "affect the rights of litigants," not just in a hypothetical scenario,

but in reality.  *Id.*  An opinion deciding that the ██████ can be rejected *if* an overall agreement

can be rejected would have no effect on the litigants' rights, especially if the Court denies NPE's

Motion to Reject.  Likewise, even if the Court grants the Motion to Reject, which it should not,

whether Caliber's Interests can also be rejected will be the primary issue in deciding the Motion

to Reject because Caliber's Interests are the crux of the Caliber Contracts.  Accordingly, NPE's

requests for summary judgment as to Count IV should be denied.

Similarly, NPE's request for summary judgment as to Count V is entirely speculative and

assumes both that a sale of NPE's assets will occur and that such a sale will be to a party that

requires the sale be free and clear of Caliber's Interests.  Whether NPE can sell its assets free and

clear under section 363(f) will be determined in the main bankruptcy case on NPE's Sale Motion

---

[12] Count IV is not a "proceeding to determine the validity, priority, or extent of a . . . interest in property."  *See* Fed. R. Bankr. P. 7001(2).  Rather, Count IV requests that the Court determine that the Caliber Contracts can be rejected, notwithstanding any interests in property.  *See* Second MSJ at 10 ("[I]f the Caliber Contracts are rejected, any ██████ contained therein will be rejected as well, even if such covenants run with the land or are equitable servitudes.").  Determination of whether a contract can be rejected, notwithstanding the interests created by that contract should appropriately be determined as part of a contested matter as set forth in Federal Rule of Bankruptcy Procedure 6006 ("A proceeding to assume, reject, or assign an executory contract . . . is governed by Rule 9014.").  Here, such contested matter is pending before this Court as part of NPE's Motion to Reject.  *Cf. In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018) (explaining that a determination as to whether a contract contains covenants that run with land should be decided as part of an adversary proceeding and not a contested matter).

11

(following the Debtors' sale process), scheduled for June 17, 2021.  If a sale does not take place

or a sale free and clear of Caliber's Interests is not a requirement of the successful bidder, the

Court's decision on whether NPE can sell its assets free and clear of Caliber's Interests would be

entirely advisory as it would have no impact on the litigants' rights.  When presented with the

argument that a sale hearing should be preceded by an adversary proceeding to determine whether

property could be sold free and clear under section 363(f) of the Bankruptcy Code, this Court

explained that such "procedure find[s] no support in the Bankruptcy Code or twenty plus years of

reported decisions interpreting the Code."  *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW),

2001 WL 1820325, at *9 (Bankr. D. Del. Mar. 27, 2001), *aff'd sub nom. In re Trans World

Airlines, Inc.*, 322 F.3d 283 (3d Cir. 2003).[13]  NPE has filed a motion to sell its property free and

clear of Caliber's Interests in the main bankruptcy case, and that motion will inevitably be decided

by this Court at the Sale Hearing.  *See* Sale Motion ¶ 47 ("[NPE] seek[s] to sell the Assets free and

clear of all (if any) ███████████ covenants, equitable servitudes, and other Interests within

the [Amended Agreements] . . . .").  Accordingly, NPE's request for summary declaratory

judgment on the sale of its property free and clear should be denied because the issues raised

completely overlap with the sale issues.  *See JJCK, LLC v. Project Lifesaver Int'l*, No. 10-930-

---

[13] Tellingly, the majority of the cases cited by the Plaintiffs in support of their 363(f) arguments are rulings on sale motions (not motions for summary judgment before bids are even due).  *See In re Daufuskie Island Properties, LLC*, 431 B.R. 626 (Bankr. D.S.C. 2010) (Ruling on trustee's sale motion); *In re DeCelis*, 349 B.R. 465 (Bankr. E.D. Va. 2006) (Ruling on trustee's sale motion); *In re Octagon Roofing*, 123 B.R. 583 (Bankr. N.D. Ill. 1991) (Ruling on trustee's sale motion); *In re Phillips*, No. 12-09022-8-DMW, 2015 WL 4040185 (Bankr. E.D.N.C. June 30, 2015) (Ruling on trustee's sale motion); *In re Balco Equities Ltd.*, Inc., 323 B.R. 85 (Bankr. S.D.N.Y. 2005) (Ruling on objections to sale of real property and to reject prepetition contract for sale of land); *In re Metroplex on the Atl., LLC*, 545 B.R. 786 (Bankr. E.D.N.Y. 2016) (Ruling on motion to confirm sale under a plan of reorganization).  Of those that involve adversary proceedings, none were decided on summary judgment.  *See In re Southland Royalty Co. LLC*, 623 B.R. 64 (Bankr. D. Del. 2020) (Ruling in adversary proceeding commenced by debtor, after failed sale process, seeking approval to sell assets free and clear under section 363(f) and to reject certain agreements); *In re Julien Co.*, 117 B.R. 910 (Bankr. W.D. Tenn. 1990) (Ruling in adversary proceeding brought by government after trustee filed motion to sell the property free and clear pursuant to 363(f)).

LPS, 2011 WL 2610371, at *6 (D. Del. July 1, 2011) ("If the declaratory judgment claim bears

'complete identity of factual and legal issues' with another claim being adjudicated by the parties,

the Court is within its discretion to dismiss the declaratory judgment action.") (citations omitted).

## II.   Plaintiffs Are Not Entitled to Summary Judgment on Count IV Because Caliber's Interests in Real Property Are Not Executory and Cannot Be Rejected

If the Court finds that the Caliber Contracts should be rejected, Caliber's Interests,

including the ████████ cannot be rejected because Caliber's Interests are interests in real

property which are not executory under the Bankruptcy Code.

### A.   Caliber's Interests in Real Property Are Not Executory

Section 365(a) of the Bankruptcy Code provides that a debtor in possession may assume

or reject any "executory contract." An executory contract is one where "performance remains due

to some extent on both sides." *Mission Prod. Holdings, Inc. v. Tempnology*, LLC, 139 S. Ct. 1652,

1658 (2019). It is clear, based on the terms of the 2018 MSAs, the history between NPE and

Caliber, and the conduct of the parties, that NPE and Caliber intended the ████████

████████████████████████████████████████████████████████

████████ Approximately four years ago, when NPE's predecessor settled a similar litigation before

this Court, NPE reaffirmed and ratified the ████████ of the ████████████ to Caliber and

agreed that the ████████ were a ████████████████████████████████

████████████████████████ [14] *See* Dec. 7, 2017 LOI. Further, in the

2018 MSAs, the parties made clear that the ████████████████████████████

████████████████████████████████████████████████████████

---

[14] For a full discussion of the Previous Action, *see* Caliber's Opposition to NPE's First Motion for Summary Judgment, [D.I. 38].

████████████████████████████████████████████

████████████████████████████████████████████ 2018 MSAs §

10.1(a)(iii).  The ██████ are, as the parties to the 2018 MSAs intended, real property interests

that cannot be rejected.  Further, the Plaintiffs do not make any argument that the other interests

conveyed to Caliber are not real property interests.  Accordingly, all of Caliber's Interests are real

property interests that cannot be rejected.

Relying on *In re Extraction Oil & Gas*, 622 B.R. 608, 620–24 (Bankr. D. Del. 2020) and

*In re Southland Royalty Co. LLC*, 623 B.R. 64, 88–89 (Bankr. D. Del. 2020), NPE argues that even

though the ██████ are covenants running with land, they can still be rejected.  NPE is wrong.

First, the Courts in *Extraction* and *Southland* did not hold that section 365 of the Bankruptcy Code

permits rejection of covenants running with land.  In fact, both *Extraction* and *Southland* held that

the contracts in question did not contain real covenants and thus could be rejected pursuant to

section 365 of the Bankruptcy Code.  *See Extraction*, 622 B.R. at 620 ("The Court . . . held . . .

that the [Agreements] do not contain covenants that run with the land."); *In re Southland*, 623 B.R.

at 80 ("[T]he Court concludes, for many of the same reasons set forth by the courts in *Sabine* and

*Extraction*, that the [Agreement] contains no real covenants.").  In dicta, *Southland* and *Extraction*

explained that in order for real covenants to be rejected under section 365 of the Bankruptcy Code,

"those covenants [must] meet the definition of an executory contract."  623 B.R. at 89; 622 B.R.

at 620–21.  Here, they do not.

Applying the *Southland* and *Extraction* reasoning, a covenant could be executory (like a

contract) where "performance remains due to some extent on both sides."  *Mission Prod.*, 139

S.Ct. at 1658.  As explained in great detail in Caliber's opposition to NPE's first motion for

summary judgment, the 2018 MSAs make clear that as part of creating the ███████ as

covenants running with the land, NPE granted Caliber a █████████████████████████

███████  The right to reasonable use of surface land to build pipelines to transport oil and gas across

the subject █████████████ is a real property interest under North Dakota law.[15]  *See Miller v.*

*Schwartz*, 354 N.W.2d 685, 689 (N.D. 1984) (quoting H. Williams and C. Meyers, Oil and Gas

Law, Manual of Terms, pp. 838-838.1 (1982)); *Sanford v. Sanford*, 301 N.W.2d 118, 122 (N.D.

1980).  Pursuant to the 2018 MSAs, NPE granted exclusive surface rights (real property interests

under North Dakota law) to Caliber to ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████  2018 MSAs § 14.1.  In addition, the 2018 MSAs granted Caliber a non-exclusive

████████████████████████████████████████████████████████████████████████

████████████████████████  *Id.*  With these conveyances and other portions of the 2018

MSAs, it is clear that the ████████ were fully performed.  Accordingly, such rights, Caliber's

Interests, are not executory.  *See, e.g.*, Oct. 26 Hr'g Tr. at 57:11–17, *In re Bon-Ton Stores, Inc.*,

Case No. 18-10248 (MFW) (Bankr. D. Del. 2018) (holding that restrictive easements and

---

[15] North Dakota courts and those across the country are in agreement that NPE's oil, gas, and/or mineral leases (its "working interests") are composed of a bundle of property right sticks—the traditional imagery of property law—including the rights to: (1) explore for oil and gas on and under particular land, (2) produce oil, gas, and saltwater from that land, (3) transport produced oil, gas, and saltwater off that land, and (4) make reasonable use of the surface of the land for said exploration, production, and transportation.  *See, e.g., Sanford v. Sanford*, 301 N.W.2d 118, 122 (N.D. 1980) ("The bundle of rights theory of appraisal holds that the ownership of real property may be compared to a bundle of sticks wherein each stick represents a separate right or privilege of ownership."); *Krenz v. XTO Energy, Inc.*, 890 N.W.2d 222, 236-39 (N.D. 2017); *Feland v. Placid Oil Co.*, 171 N.W.2d 829, 834 (N.D. 1969); *see also* Kirk B. Burkley, Navigating Oil and Gas Lease Issues, Am. Bankr. Inst. J. 18 (2011) ("[A]n an oil and gas lessor's rights come in three general parts.  First, the company is to have the exclusive right to search for oil and gas underlying the leased premises.  Next, the company has the right to enter the property-owner's lands to conduct drilling operations for the purpose of producing oil and gas from the leased premises.  Lastly, [] the lessee has the right to transport the oil and gas by pipeline across the subject property.").

covenants as part of a contract were not executory and could not be rejected under section 365 of the Bankruptcy Code).  These real property interests ████████ or conveyed to Caliber are not executory as there is no performance due by NPE (or Caliber) regarding them—the ████████ and conveyances already occurred.  Accordingly, Caliber's Interests—including the ████████ and the other interests conveyed to Caliber—cannot be rejected because such rights are real property interests that are not executory.

      B.      *Caliber's Interests Must Survive Rejection Because Rejection Is Breach, Not Rescission*

Even if NPE can reject the Caliber Contracts, which is ultimately to be determined in connection with the Motion to Reject, rejection will not make Caliber's rights under the contracts disappear.  "A rejection breaches a contract but does not rescind it . . . [which] means all the rights that would ordinarily survive a contract breach . . . remain in place."  *Mission Prod.*, 139 S.Ct. at 1658.[16]  "And 'breach' is neither a defined nor a specialized bankruptcy term. It means in the Code what it means in contract law outside bankruptcy."  *Id.*  "So the first place to go in divining the effects of rejection is to non-bankruptcy contract law, which can tell us the effects of breach."  *Id.* at 1661–62.  When a breach occurs, the choice of whether to terminate the agreement altogether rests with the injured, non-breaching party.  *Id.* at 1662.  The breaching party cannot terminate the agreement.  *Id.*  When a contract is rejected in bankruptcy, the contractual counterparty is faced with a choice in how to respond: "continue the contract or walk away, while suing for whatever damages go with its choice."  *Id.*  The Supreme Court specifically rejected an approach that would

---

[16] The Plaintiffs' argument that the Caliber Contracts must be rejected *in toto* is inapplicable in that the Plaintiffs are not attempting to reject one executory portion of a contract and assume other executory portions.  As this Court has recognized, the *in toto* concept does not affect rights that are not executory.  *See In re CB Holding Corp.*, 448 B.R. 684, 689 (Bankr. D. Del. 2011) (Finding that a right-of-first-refusal provision was an executory contract subject to rejection under section 365).

mean counterparties to "contracts [] lose their rights." *Id.* at 1661. Accordingly, if the Caliber Contracts can be rejected, Caliber's Interests, the rights already granted to Caliber under certain of the Caliber Contracts, will survive a rejection of the Caliber Contracts.

Even if the Caliber Contracts do not contain covenants running with land (they do), the other Caliber Interests would survive rejection. The Supreme Court was clear that the rejection of a contract equals breach, not rescission. *Id.* at 1657–58 ("A rejection breaches a contract, but does not rescind it."). It does not matter whether the contract conveyed an interest in real property or merely a contractual right. *Mission Product* speaks in terms of contractual rights, not property rights. *See id.* at 1663 ("[I]f the not-yet debtor was subject to a counterparty's contractual right (say, to retain a copier or use a trademark), so too is the trustee or debtor once the bankruptcy petition has been filed."). Indeed, the specific contract at issue in *Mission Product* did not convey any interest in real property. *Id.* at 1658 ("This case arises from a [trademark] licensing agreement gone wrong.").[17] Thus, even if NPE argues that Caliber's Interests are not covenants running with the land, such interests must survive rejection under *Mission Product*.

Plaintiffs next argue that Caliber can be forced to accept a rejection damages claim for a breach of Caliber's Interests upon a rejection of the Caliber Contracts even if Caliber's Interests include covenants running with the land. However, the availability of money damages does not

---

[17] Similarly, the rejection of a contract containing a noncompetition clause (not an interest in real property) does not rescind the counterparty's right to enforce the noncompetition clause. *See In re Klein*, 218 B.R. 787, 791 (Bankr. W.D. Pa. 1998) (Fitzgerald, J.) (applying Third Circuit precedent to "conclude that the covenant remains effective despite the rejection, to the extent that it is enforceable under applicable law"); *In re Spooner*, No. 11-31525, 2012 WL 909515, at *4 (Bankr. N.D. Ohio Mar. 16, 2012) ("[R]elieving Debtor of the burdensome obligation of refraining from engaging in competitive activities cannot be accomplished by rejecting the Non–Compete Agreement . . . ."); *In re Ortiz*, 400 B.R. 755, 769 (C.D. Cal. 2009) ("[T]he bankruptcy court's decision that rejection of the promotional agreement, by itself, 'terminated' the contract and extinguished [the contract counterparty's] ability to seek equitable relief for breach of contract was error."); *Sir Speedy, Inc. v. Morse*, 256 B.R. 657, 660 (D. Mass. 2000) (rejection of franchise agreement did not relieve the debtor of compliance with the contract's noncompetition clause).

17

eliminate the other remedies provided for under a contract, including injunctive relief.  This is because injunctive relief is not a claim.[18]  Further, a contract counterparty with the right to equitable remedies cannot be forced to accept monetary damages by the breaching party.  *See Mission Prod.*, 139 S.Ct. at 1662 ("[T]he law firm has an option about how to respond—continue the contract or walk away, while suing for whatever damages go with its choice."); *Matter of Davis*, 3 F.3d 113, 116 (5th Cir. 1993) ("While section 101(5)(B) encourages creditors to select money damages from among alternative remedies, it does not require creditors entitled to an equitable remedy to select a suboptimal remedy of money damages.").  As explained above, whether the contract contains real property interests or not, the rights conveyed to a contract counterparty cannot be rescinded by a mere rejection of the contract under section 365 of the Bankruptcy Code.  *See Mission Product*, 139 S.Ct. at 1662.

North Dakota law recognizes the grant of both actual and punitive damages as well as injunctive relief for the enforcement of covenants.  *See, e.g.*, *Eakman v. Robb*, 237 N.W.2d 423, 424 (N.D. 1975) ("[T]he trial court's award of actual and punitive damages was not clearly erroneous nor was its grant of a permanent injunction to enforce such restrictive covenant an abuse of discretion.").  The 2018 MSAs, in particular, explicitly provide that Caliber may pursue ███ ████████████████████████████████████ 2018 MSAs § 12.2.  The cases cited by Plaintiffs here are not instructive.  *In re Extraction Oil & Gas*, 622 B.R. at 624 (explaining, without discussing the Supreme Court's holding in *Mission Product*, that the agreements "explicitly provide for a specific amount of monetary damages to remedy a breach of the alleged real

---

[18] *See, e.g.*, *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493 (6th Cir. 2001) (an injunction to prevent further violation of a covenant is not a claim); *Matter of Udell*, 18 F.3d 403 (7th Cir. 1994) (injunctive relief is not a claim); *In re Hruby*, 512 B.R. 262, 267 (Bankr. D. Colo. 2014) (concluding that injunctive relief to enforce a covenant is not a claim).

covenant"); *Krenz v. XTO Energy, Inc.*, 890 N.W.2d 222, 235 (N.D. 2017) (reversing an award of monetary damages for trespass on land). In fact, NPE ignores the holding of *Mission Product* entirely because it makes clear that Caliber has a choice: it can "continue the contract or walk away, while suing for whatever damages go with its choice." 139 S.Ct. at 1662. Accordingly, there is no precedent or law that would require Caliber to accept monetary damages (here, a rejection damages claim) in lieu of equitable relief to enforce its real property rights.

As explained above, the 2018 MSAs grant Caliber certain interests, including the right to build and develop the systems needed to service the ███████████. *See* 2018 MSAs §§ 10.1 and 14.1. In addition, each 2018 MSA provides that the ████████████████████ ██████████████████████████████ 2018 MSAs § 13.2. Under the terms of the 2018 MSAs and North Dakota law, covenants like the ones contained in the 2018 MSAs bind successors. *See, e.g.*, *Wheeler v. Southport Seven Planned Unit Dev.*, 821 N.W.2d 746, 753 (N.D. 2012) ("Covenants to pay money have been enforced against successors to the covenantor as covenants running with the land at law . . . In most cases, the appropriate relief has been an injunction against future breaches . . . ."). As made clear by the Supreme Court, these rights cannot be rescinded by rejection. *Mission Prod.*, 139 S.Ct. at 1662. They are merely breached by NPE upon rejection. Caliber retains its rights to seek any relief available at law or in equity and such rights cannot be determined as part of the Plaintiffs' Second MSJ.

## III.    Plaintiffs Are Not Entitled to Summary Judgment on Count V

### A.    *Plaintiffs Are Not Entitled to Summary Judgment on Section 363(f)(4) of the Bankruptcy Code*

The Plaintiffs argue that they are entitled to summary judgment on Count V because there is a *bona fide* dispute over Caliber's Interests. Such request is premature and, in reality, there is

no current *bona fide* dispute.  Caliber is required procedurally to respond to the Plaintiffs'

Complaint and related filings, but the mere existence of a declaratory judgment action does not

*ipso facto* result in a *bona fide* dispute.  *See In re Revel AC, Inc.*, 802 F.3d 558, 573 (3d Cir. 2015)

("[T]he mere filing of a declaratory judgment action doesn't itself create a *bona fide* dispute under

§ 363(f)(4), even if Article III's 'case or controversy' requirement has been met.").  In fact, the

Debtors are in the nascent stages of a sales process – the bid deadline is not until June 11, 2021.

As part of any bid, interested parties are required to indicate the Debtors' assets being acquired,

the proposed treatment of the Caliber Contracts, and provide a proposed purchase agreement

similar to the Stalking Horse Agreement.  Viewed in the most objective and practical light, until

the Debtors select the terms of a successful bid and proceed to seek approval of that actual sale,

no one knows whether there will be an actual dispute over Caliber's Interests and contracts.  In

*Southland*, the debtors similarly attempted to rely on a hypothetical dispute – the filing of an appeal

– and the court refused to decide whether 363(f)(4) applied.  *See In re Southland*, 623 B.R. at 99.

This Court should order likewise and deny summary judgment for the portion of Plaintiffs' Count

V seeking relief under section 363(f)(4) of the Bankruptcy Code.

> **B.    *Plaintiffs Are Not Entitled to Summary Judgment on Section 363(f)(5) of the Bankruptcy Code***

NPE asserts, and bears the burden to show, that Caliber can be compelled to accept

monetary damages under North Dakota law for its interest in real property.  NPE has failed to meet

its burden.  Caliber cannot be compelled, in a legal or equitable proceeding, to accept a money

satisfaction of its interests under the Caliber Contracts or North Dakota law.

Section 363(f)(5) allows a debtor to sell free and clear of another party's interest in such

property if such party "could be compelled, in a legal or equitable proceedings, to accept money

20

satisfaction of such interest."  11 U.S.C. 363(f)(5).  The Plaintiffs bear the burden and "must do more than show that it is theoretically possible to compel [Caliber] to accept a money satisfaction under section 365(f)(5)."  *In re Ferris Properties, Inc.*, No. 14-10491 (MFW), 2015 WL 4600248, *2 (Bankr. D. Del. July 30, 2015)(citation omitted); *see also In re Haskell L.P.*, 321 B.R. 1, 8–9 (Bankr. D. Mass. 2005) (rejecting the argument that debtors need only show that it is theoretically possible to compel a party under § 363(f)(5)).

NPE has the burden to prove that there exists a "legal or equitable" proceeding in which Caliber could be compelled to accept money damages.  The question is not whether money damages are available (they are), but whether Caliber can be compelled under North Dakota law to accept money damages in lieu of equitable relief to enforce its rights.  Where the contract counterparty has a choice of equitable or legal remedies, such party cannot be compelled to accept money.  *See, e.g.*, *Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir. 1994) ("[W]e conclude that if the money damages are available upon the consent, then such persons are not compelled to accept money, and thus § 363(f) does not apply . . . [the] landowners have the option to pursue monetary damages, but [] the landowners cannot be forced to forego equitable relief in favor of a cash reward.").  The Court will look to the language of the agreement and state law to determine whether the contract counterparty can be compelled to accept monetary damages.  *Id.*

As set forth above in Sec. II B. *supra*, in the context of rejection, Caliber's remedies under the 2018 MSAs are not limited to money damages.  The 2018 MSAs provide that Caliber can ██████████████████████████████████████████████  *See* 2018 MSAs § 12.2.  Indeed, ████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████  2018 MSAs § 13.1.  In

addition, the 2018 MSAs provide that the Agreement ████████████████████████

████████████████████████████████████ *Id.* § 13.2.  Further, with respect to easements and

other real property interests, the 2018 MSAs provide, in part, for ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ 2018 MSAs § 14.1.  These are real property interests under

North Dakota law.  *See, e.g.*, *Kittleson v. Grynberg Petrol. Co.*, 876 N.W.2d 443, 450 (N.D. 2016)

("Oil and gas leases are interests in real property in North Dakota.") (quoting *Nantt v. Puckett*

*Energy Co*., 382 N.W.2d 655, 659 (N.D. 1986)); *see also Armstrong v. Dakota W. Bank of Bowman*

*(In re Arithson)*, 175 B.R. 313, 322 (Bankr. D.N.D. 1994) ("Similarly, a landowner's mineral estate

or interest in unextracted oil and gas, even when split away from the surface estate, is an interest

in real estate and governed by the law of real estate mortgages.").  Under the terms of the 2018

MSAs, Caliber's Interests in real property survive, bind, and inure to successors in interest.

Plaintiffs have failed to proffer even one proceeding under North Dakota law whereby

Caliber would be compelled to accept a monetary satisfaction for a complete cancellation of

Caliber's Interests against NPE and any purchaser of NPE's assets.  Plaintiffs rely on *Krenz* and

*Wheeler* to support their position, but that reliance is misplaced.  In *Krenz*, the plaintiffs pleaded a

covenant enforcement action alleging a claim against the defendants for trespass, unjust

enrichment, and surface damages for the defendant's unauthorized use of their land.  890 N.W.2d

at 229.  In addition, the plaintiffs sought *injunctive relief* to prevent the defendants from continuing

the unauthorized use of their land.  *Id.*  The trial court awarded damages on summary judgment,

but that ruling was reversed by the Supreme Court of North Dakota and remanded to the trial court

to "craft an appropriate remedy specifically tailored to the parties' future relationship and in view of the court's ultimate ruling on the trespass claims." *Id.* at 236.  In *Wheeler*, the covenant at issue, instead of a ██████ or other restrictive covenant, *required* the payment of money.  *See Wheeler v. Southport Seven Planned Unit Dev.*, 821 N.W.2d 746, 753 (N.D. 2012) (discussing a covenant to pay assessments).  Thus, neither North Dakota case cited by the Plaintiffs is instructive.

Instead, courts in North Dakota recognize the equitable enforcement of covenants and other interests in real property, like Caliber's interests.  *See, e.g.*, *Wachter Dev., Inc. v. Martin*, 931 N.W.2d 698, 705 (N.D. 2020) (requiring the enforcement of restrictive covenant on successor in title or interest); *Wheeler v. Southport Seven Planned Unit Dev.*, 821 N.W.2d 746, 753 (N.D. 2012) ("In most cases, the appropriate relief has been an injunction against future breaches and, if necessary, damages for past breaches.")(citing 9 Richard R. Powell, Powell on Real Property § 60.07 (Michael Allan Wolf ed., 2012).

Other courts have found, generally, that holders of real property interests cannot be compelled to accept money damages in lieu of equitable relief when breached.  *In re Badlands Energy, Inc.*, 608 B.R. 854, 874 (Bankr. D. Colo. 2019) ("Restrictions that run with the land create equitable interests that do not compel a person to accept a monetary interest.") (internal citations omitted); *In re Sabine Oil & Gas Corp.*, 567 B.R. 869, 874 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018) ("[I]t is not possible for a debtor to reject a covenant that 'runs with the land,' since such a covenant creates a property interest that is not extinguished through bankruptcy."); *see also Gouveia v. Tazbir*, 37 F.3d 295, 299 (7th Cir. 1994) (denying the sale free and clear under section 363(f)(5), finding that neither the contractual real covenants nor Indiana law could compel the relinquishment of equitable relief in favor of a cash award); *Banning Lewis Ranch Co., LLC v.*

*City of Colo. Springs, Colo. (In re Banning Lewis Ranch Co., LLC)*, 532 B.R. 335, 345-46 (Bankr. D. Colo. 2015); *In re Oyster Bay Cove, Ltd.*, 161 B.R. 338 (Bankr. E.D.N.Y. 1993), *aff'd*, 196 B.R. 251 (E.D.N.Y. 1996); *In re 523 E. Fifth St. Housing Pres. Dev. Fund Corp.*, 79 B.R. 568 (Bankr. S.D.N.Y. 1987).  There is nothing in the Caliber Contracts, and the Plaintiffs have failed to show anything under North Dakota law, which could compel Caliber to relinquish its equitable remedies against Debtors and the next owner of Debtors' assets.

## **CONCLUSION**

For the reasons set forth above, Caliber respectfully requests that the Court deny the Second

MSJ.

Dated:   April 16, 2021                 Respectfully Submitted,
          Wilmington, Delaware

MORRIS NICHOLS ARSHT AND TUNNELL LLP

*/s/ Nader A. Amer*_____
Curtis S. Miller (No. 4853)
Taylor M. Haga (No. 6549)
Nader A. Amer (No. 6635)
1201 N. Market St., 16th Floor
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
cmiller@morrisnichols.com
thaga@morrisnichols.com
namer@morrisnichols.com

*-and-*

WEIL, GOTSHAL & MANGES LLP
Alfredo R. Perez (admitted *pro hac vice*)
Brenda L. Funk (admitted *pro hac vice*)
Tristan M. Sierra (admitted *pro hac vice*)
700 Louisiana, Suite 1700
Houston, TX 77022-2784
Telephone: (713) 546-5040
Email: alfredo.perez@weil.com
       brenda.funk@weil.com
       tristan.sierra@weil.com

*-and-*

Edward Soto (admitted *pro hac vice*)
Lauren Z. Alexander (admitted *pro hac vice*)
Corey D. Berman (admitted *pro hac vice*)
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100
Email: edward.soto@weil.com

25

lauren.alexander@weil.com
corey.berman@weil.com

*Counsel to Caliber North Dakota, LLC (d/b/a Caliber Midstream North Dakota, LLC), Caliber Measurement Services, LLC, and Caliber Midstream Fresh Water Partners, LLC*