**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NINE POINT ENERGY HOLDINGS, INC., | ) | |
| et al., | ) | |
| | ) | Case No. 21-10570 (MFW) |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| | ) | |
| NINE POINT ENERGY HOLDINGS, INC., | ) | |
| and NINE POINT ENERGY, LLC | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. No. 21-50243 |
| CALIBER MEASUREMENT SERVICES LLC, | ) | |
| CALIBER MIDSTREAM FRESH WATER | ) | |
| PARTNERS LLC and CALIBER NORTH | ) | |
| DAKOTA LLC, | ) | Related Docs. 82, 83 |
| | ) | 6, 38, 58, 14, 54 , 69 |
| Defendants. | ) | |

**MEMORANDUM OPINION IN SUPPORT OF ORAL RULINGS**[1]

The Court issues this written opinion pursuant to Local Bankruptcy Rule 8003-2[2] in support of its oral rulings granting the Debtors' Motions for Summary Judgment in the above adversary proceeding.

---

[1]     This Memorandum Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

[2]     That Rule provides that a "bankruptcy judge whose order is the subject of an appeal may, within seven (7) days of the filing date of the notice of appeal, file a written opinion that supports the order being appealed."  Del. Bankr. L.R. 8003-2.

I.    <u>FACTUAL BACKGROUND</u>

In October, 2012, Caliber North Dakota LLC, Caliber Midstream Fresh Water Partners LLC, and Caliber Measurement Services LLC (collectively "Caliber") and the Debtors' predecessor, Triangle USA Petroleum Corporation ("TUSA") entered into a Midstream Services Agreement and related agreements (collectively the "MSA"). Pursuant to the MSA, Caliber provided services to the Debtors including gathering, processing, and transportation of gas, oil, and water from the Debtors' gas and oil leases in North Dakota, in exchange for which the Debtors agreed to pay minimum monthly revenues to Caliber. On June 29, 2016, TUSA and its affiliates filed a chapter 11 case and on July 5, 2016, filed an adversary complaint against Caliber seeking clarification of the parties' rights under the MSA. (2016 Case D.I. 1 & 70.) Caliber filed a motion for relief from the stay to permit it to proceed with an already pending action in the North Dakota courts which dealt with the same issues raised in the Debtors' adversary complaint. (<u>Id.</u> at 353.) The Court granted Caliber's motion on November 22, 2016, and abstained from considering the Debtors' adversary complaint. (<u>Id.</u> at 436.) On the eve of a hearing on summary judgment in the North Dakota action, the parties settled their dispute. They filed a motion in the TUSA bankruptcy case seeking approval of a stipulation incorporating that settlement and resolving the

2

parties' remaining disputes in the bankruptcy case, which was approved by the Bankruptcy Court.  (Id. at 984 & 1007.)

On March 15, 2021, Nine Point Energy Holdings, Inc., and its affiliates (the "Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code.  On that same day, two of the Debtors filed an adversary complaint against Caliber seeking a declaratory judgment about the rights the parties had under the MSA.  On March 16, 2021, the Debtors filed two Motions seeking summary judgment on Counts 2-5 of that Complaint.  The Motions were opposed by Caliber and oral argument on both was held on May 4, 2021.[3]  At the conclusion of the hearing, the Court rendered a ruling on the record granting the Debtors' Motions. (Adv. D.I. 76.)  Two written orders to that effect were entered on May 12, 2021.  (Adv. D.I. 82 & 83.)  On May 26, 2021, Caliber filed notices of appeal of those two orders.  (Adv. D.I. 89 & 90.)

II.  <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this adversary proceeding, as it is a core proceeding dealing with the determination of the validity, priority, and extent of liens and interests in property of the estate and issues affecting the

---

[3]    Oral argument was also held that same day on Caliber's Motion to Dismiss the complaint.  Caliber's Motion was granted as to Count 1 but denied as to the other Counts.  (Adv. D.I. 80.)

liquidation of assets of the estate.  28 U.S.C. §§ 1334(b),
157(b)(2)(K) & (O).  Article III does not limit the Court's
authority to enter final judgment on claims and counterclaims
dealing with parties' interests in property of the estate.  See,
e.g., TSA Stores, Inc. v. MJ Soffe, LLC, 565 B.R. 292, 297
(Bankr. D. Del. 2017) (finding jurisdiction where "the action at
issue . . . would necessarily be resolved in the claims
allowance process") (quoting Stern v. Marshall, 564 U.S. 462, 564
(2011)).  Therefore, the Court concludes that it had jurisdiction
to hear this core proceeding and authority to enter final
judgment on the Debtors' Motions for Summary Judgment.


III. DISCUSSION

    A.    Standard of Review

    Rule 7056 of the Federal Rules of Bankruptcy Procedure
incorporates Rule 56(c) of the Federal Rules of Civil Procedure,
which sets forth the applicable summary judgment standard.  Fed.
R. Bankr. P. 7056; Fed. R. Civ. P. 56(c).  Summary judgment may
be granted only "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(a).  See also
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (holding that
the party moving for summary judgment has the initial burden of
demonstrating the absence of a dispute of material fact).

4

Admissions in pleadings, affidavits, discovery, and disclosure materials on file, including all factual inferences derived therefrom, are viewed in the light most favorable to the nonmoving party.  Id.

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201 (2020).

B.   First Motion for Summary Judgment

In their First Motion for Summary Judgment, the Debtors sought a declaratory judgment on Counts 2 and 3 of their adversary complaint that the MSA did not contain any covenants or equitable servitudes that run with the land or convey any of the Debtors' real property interests to Caliber.  The Court concluded that there were no disputed material facts relevant to the Motion (or to the Second Motion for Summary Judgment) as the parties' rights were articulated in the MSA which was not ambiguous and that the parties' dispute centered on the application of the law to those rights.

1.   Judicial Estoppel

Caliber initially argued that judicial estoppel precludes the Debtors from arguing that the Dedications and Interests

granted to Caliber in the MSA were not a covenant that runs with the land.  It contended that this issue was judicially decided by the Court in the prior bankruptcy case when it approved the settlement agreement between the Debtors' predecessor and Caliber in which the Debtors' predecessor expressly agreed that the Interests and Dedications are covenants that run with the land.

The Court rejected this argument because judicial estoppel is generally not applicable to settlement agreements.  Teledyne Inds., Inc. v. NLRB, 911 F.2d 1214, 1218-19 (6th Cir. 1990). That is because, in agreeing to a settlement, a party does not press a legal position on the merits to the court and, in approving a settlement, the court does not accept either party's position on the merits.  Id.

The Teledyne court did note that judicial estoppel might apply where a bankruptcy court approves a settlement because of the court's independent obligation to assure that the settlement was fair and equitable to all creditors in the case.  Id. (citing Reynolds v. Commissioner of Internal Revenue, 861 F.2d 469 (6th Cir. 1988)).  However, the Court concluded that the instant case was distinguishable.  At the time that the Bankruptcy Court approved the settlement between the Debtors' predecessor and Caliber in the prior bankruptcy case, the plan of reorganization had been confirmed and, therefore, the settlement only affected the interests of the parties to it.  The Court made no specific

findings other than to approve the stipulation of the parties
which resolved Caliber's proof of claim, the motion to reject
Caliber's contracts, and Caliber's appeal of the confirmation
order.  Thus, that settlement was more akin to the typical
settlement of a two-party dispute, rather than a settlement that
impacted the myriad parties in a bankruptcy case.  In seeking
approval of the settlement, neither Caliber nor the Debtors'
predecessor asked the Court to decide if the Dedications and
Interests were covenants that run with the land and the Court
never rendered a decision on the merits of that issue.

As a result, the Court concluded that judicial estoppel was
not applicable and addressed the merits of the Debtors' Motions.

    2.   <u>North Dakota Law</u>

The parties agreed that the parties' rights under the MSA
are governed by North Dakota law.

Under North Dakota law, "All covenants contained in a grant
of an estate in real property, which are made for the direct
benefit of the property or some part of it then in existence, run
with the land."  N.D. Cent. Code § 47-04-26.  To be a covenant
that runs with the land, the covenant must be contained in a
grant of a Real Property Estate.  <u>Bull v. Beiseker</u>, 113 N.W. 870
(1907).  Real Property Estate is defined as (a) land, (b) what is
affixed to land, (c) what is appurtenant or incidental to land,
or (d) that which is immovable.  <u>Id.</u> at § 47-01-03.

7

Further, to be a covenant that runs with the land, the covenant must touch and concern the occupation or enjoyment of real property thereby directly benefitting the Real Property Estate.  N.D. Cent. Code § 47-04-26; Beeter v. Sawyer, 771 N.W.2d 282, 286 (N.D. 2009) (holding that "if a covenant contained in a deed does not directly benefit the land as required by N.D.C.C. § 47-04-26, it is personal and is enforceable only between the original parties to the deed" and not subsequent owners of the land).

Finally, it is not enough that the parties call it a covenant that runs with the land.  Beeter, 771 N.W.2d at 286.

  3. Application to the MSA

   a. Parties' Stipulation

Caliber argued that the parties stipulated in 2018 that the Dedications and Interests granted in the original MSA were covenants that run with the land.

The Court rejected that argument, because it is not enough that the parties call something a covenant that runs with the land.  Beeter, 771 N.W.2d at 286.  Rather, the provision must actually be a covenant that runs with the land under the contours of the North Dakota statute.

   b. Contained in Grant of Real Property Estate

The Debtors argued that the Dedications and Interests are not covenants that run with the land because the grant of those

8

interests was not contained in, and simultaneous with, the creation of the parties' rights and obligations under the original agreements.  The Debtors contended that the original MSA was executed in 2012, while the rights in property on which Caliber relies were created in the 2018 Amended MSA.  Caliber argued, however, that the real property interests on which it relies were conveyed to it in the original MSA in 2012 and that the Amended MSA simply confirmed this.  (Amended MSA at § 14.1.)

The Court concluded that it was not necessary to decide this issue because even if the language in the Amended MSA were in the original MSA, that language is insufficient to grant Caliber any interest in any Real Property Estate.

Caliber asserted that it was granted an interest in the Surface Rights which are a part of the bundle of real estate interests that the Debtors obtained in the gas and oil leases they held.  It relied on two bankruptcy court cases from other jurisdictions which so held with respect to similar covenants. Alta Mesa Resources, LP v. Kingfisher Midstream, LLC (In re Alta Mesa Resources, Inc.), 613 B.R. 90 (Bankr. S.D. Tex 2019) (interpreting Oklahoma law); Monarch Midstream v. Badlands Prod. Co. (In re Badlands Energy, Inc.), 608 B.R. 854 (Bankr. D. Colo. 2019) (interpreting Utah law).

The Court found more persuasive, however, the analysis of Judges Sontchi and Owens in this District, both of whom concluded

that provisions similar to those in the MSA were not covenants
that run with the land.  Southland Royalty Co. LLC v. Wamsutter
(In re Southland Royalty Co. LLC), 623 B.R. 64, 86-87 (Bankr. D.
Del 2020) (J. Owens); Extraction Oil and Gas, Inc. v. Platte
River Midstream, LLC (In re Extraction Oil and Gas, Inc.), 622
B.R. 581, 596-97 (Bankr. D. Del 2020) (J. Sontchi).  Although
those cases dealt with Wyoming and Colorado law, respectively,
those laws are remarkably similar to North Dakota law.

     The Court concluded that the MSA did not grant any interest
in a Real Property Estate under North Dakota law for several
reasons.  First, no interest in the Mineral Rights held by the
Debtors was granted to Caliber because the MSA confirmed that the
Debtors at all times retained title to the Mineral Rights.  (MSA
at §§ 7.3, 10.2(c)(iv) & 10.2(k).)  While the MSA granted Caliber
control over the produced oil and gas, that is not the grant of
an interest in real property under North Dakota law.  See, e.g.,
Fed. Land Bank of St. Paul v. State, 274 N.W.2d 580, 583 (N.D.
1979) (holding that, once extracted from the land, oil and gas
are severed from the real property and become personal property
under North Dakota law).

     Further, the Surface Rights granted to Caliber under the MSA
are not covenants that run with the land under North Dakota law,
because the grant of an easement or other non-exclusive interest
in the surface of land is not an estate in real property or

"appurtenant" to an estate in real property.  See, e.g., Lindvig
v. Lindvig, 385 N.W.2d 466, 472 n.7 (N.D. 1986) ("An estate in
land, however, confers the right to exclusive possession" as
opposed to a mere license, which allows the licensee only "to use
portions of the land for specific purposes.").  See also Schatz
v. Schatz, 419 N.W.2d 903, 907 (N.D. 1988) (holding that an
easement is a non-possessory interest in land belonging to
another which entitles the easement holder to limited use or
enjoyment of the land and is not a covenant that runs with the
land).  The MSA did not grant Caliber the exclusive right to use
of the Surface Rights; instead, the Debtors granted Caliber only
a non-exclusive right to access the property for the purpose of
constructing and maintaining the pipeline and related facilities
necessary for Caliber to perform its obligations under the MSA.
(MSA § 14.1.)  The Court concluded that that is not the grant of
a Real Property Estate sufficient to create a covenant running
with the land under North Dakota law.

        In addition, the Court held that the Interests and
Dedications are not covenants that run with the land because they
do not directly touch on or concern the real property interests
of the Debtors, namely the mineral interests.  The Court
concluded that the covenants provided no direct benefit to the
mineral interests, but only personal benefits to the Debtors by
providing transportation of the Debtors' personal property (the

severed oil and gas) and related services for a fee.  Thus, the
Court concluded they do not satisfy the requirement of North
Dakota law that to run with the land a covenant must directly
benefit the real property.  N.D. Cent. Code § 47-04-26 (a
covenant running with the land is one that is "made for the
direct benefit of the property . . . .").  See also Beeter, 771
N.W.2d at 286 ("[I]f a covenant or deed restriction benefits the
grantor personally, and serves no real benefit to the land, then
the covenant is personal in nature and does not 'run with the
land' upon a subsequent sale of the property.").

Caliber argued, nonetheless, that the Interests and
Dedications did provide a direct benefit to the Debtors' mineral
interests because they allowed the construction of the pipeline
and related facilities which allowed the oil and gas to be
transported to market.  It contended that the gathering system
and pipelines make the Debtors' mineral interests in place more
valuable by providing a ready means of transporting them to
market.

The Court disagreed, concluding that the Interests and
Dedications were granted, not to directly benefit the mineral
interests, but to allow Caliber to perform the services it was
obligated to perform under the MSA in order to be paid.  This
purpose is evident from the totality of the MSA and the specific
language which granted Caliber an interest in the Interests and

Surface Rights only to the extent necessary for the performance of its obligations under the MSA.  (MSA at §§ 10.1 & 14.1.)

Both the Eighth and the Tenth Circuits have concluded that under North Dakota law, agreements similar to the MSA which provide for sharing of costs to develop oil and gas rights are not covenants running with the land, because they do not provide direct benefits to the land itself.  Slawson Expl. Co. v. Nine Point Energy, LLC, 966 F.3d 775, 779 (8th Cir. 2020) (concluding that an agreement to share costs of drilling was, at best, an indirect benefit to the land even though it might encourage development of the mineral interests); Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC, 887 F.3d 1003, 1028-29 (10th Cir. 2018) (concluding that Area of Mutual Interest agreements which shared acquisition and development costs of oil and gas leases were not covenants running with the land).

Accordingly, the Court concluded that nothing in the MSA, including the Interests and Dedications, were a covenant running with the land in favor of Caliber.  As a result, the Court granted the Debtors' First Motion for Summary Judgment as to Counts 2 and 3 of the Complaint.

C.   Second Motion for Summary Judgment

In their Second Motion for Summary Judgment, the Debtors sought a declaratory judgment on Counts 4 and 5 of their adversary complaint that they may reject the MSA, including any

13

covenants or equitable servitudes therein, pursuant to section 365 of the Bankruptcy Code and may sell their assets free and clear of any rights of Caliber pursuant to section 363 of the Bankruptcy Code.

    1.   <u>Ripeness</u>

Preliminarily, Caliber argued that neither Count 4 nor 5 was ripe for summary judgment, because it was not clear if the Debtors would, in fact, reject the Caliber MSA or if the Debtors would sell their assets free and clear of Caliber's interests. Consequently, Caliber argued that the Court was being asked to issue an advisory opinion on a set of hypothetical facts rather than an actual controversy.

The Debtors argued that there is an actual controversy because the stalking horse bidder required a decision on these issues as a pre-condition to closing on its offer for the Debtors' assets and that other potential bidders would also require clarification of what assets are being sold by the Debtors. Therefore, they contended that the issue is ripe for decision.

The Court concluded that the issues were ripe for decision now because it was clear that there was an actual case in controversy, not a hypothetical one. The Debtors and Caliber clearly had very different ideas of what their respective rights under the MSA are and that dispute cast uncertainty on the

Debtors' existing sale process which was subject to upcoming deadlines.  A decision on that dispute was necessary before bids were due because of the uncertainty that prospective buyers may have as to exactly what assets are being sold and whether those assets are subject to any rights that Caliber may have.  In fact, that uncertainty might cause prospective bidders to decline to even bid, which would depress the price paid for the Debtors' assets thereby having a detrimental effect on the bankruptcy estate and all the Debtors' creditors.  As a result, the Court concluded that the issues raised were ripe for decision and addressed the merits of Counts 4 and 5.

    2.   Rejection of the MSA under Section 365

        a.   Effect of 2018 Stipulation

Caliber argued that the Debtors agreed in the 2018 stipulation and amendment to the MSA that the Interests and Dedications are not executory and, therefore, the Debtors cannot reject those provisions under 365 of the Bankruptcy Code.  (MSA § 10.1(a)(iii).)

The Court rejected Caliber's argument because such an agreement violates public policy.  Federal courts consistently refuse to enforce waivers of federal bankruptcy rights.  See, e.g., In re Intervention Energy Holdings, 553 B.R. 258, 265-66 (Bankr. D. Del. 2016) (concluding that waiver of right to file bankruptcy petition was void as contrary to federal public

policy); In re Trans World Airlines, Inc., 261 B.R. 103, 113-17
(Bankr D. Del. 2001) (concluding that pre-petition waiver of
debtor's right to assume or reject an executory contract was
unenforceable).

              b.    Not Executory

     The Court also rejected Caliber's argument that the
Interests and Dedications cannot be rejected because the parties
stipulated that those provisions are not executory.  Even if that
part of the parties' agreement were enforceable, the Court held
that it is irrelevant.  In determining whether a debtor can
reject a contract, the Court must consider only whether the
contract in toto is an executory contract, not whether each and
every term within the contract is executory.  This is evident
from the very definition of an executory contract, which is
whether there remains some performance on each side which if not
performed would be a material breach, not whether every term is
unperformed.  See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas
Dist Corp, 872 F.2d 36, 39-40 (3d Cir. 1989) (adopting the
Countryman definition of an executory contract and concluding
that if a debtor rejects a contract, it must reject it in toto).

     In this case, the Dedications and Interests are not stand-
alone contracts but are contained in the MSA itself.  Further,
those provisions are not severable from the MSA, because they are
expressly granted in relation to and for the purpose of

                            16

performance of the MSA.  (MSA §§ 10.1 & 14.1.)  Therefore, the
Court concluded that if the Debtors reject the Caliber MSA, every
term of that contract would be rejected, including the Interests
and Dedications.  <u>Sharon Steel</u>, 872 F.2d at 40.

c.  <u>Breach, not Termination</u>

Caliber also argues that, even if the Debtors reject the
MSA, its Interests and Dedications survive because rejection is
merely a breach, not a termination, of a contract.  <u>See, e.g.</u>, 11
U.S.C. § 365(g); <u>Mission Prod. Holdings, Inc. v. Tempnology, LLC</u>,
139 S.Ct. 1652, 1658 (2019).

The Court found the <u>Mission Products</u> case distinguishable
from this case.  In <u>Mission Products</u>, the contract at issue was a
trademark license agreement.  The Supreme Court held that the
rejection of the contract did not eliminate the license.  <u>Id.</u> at
1662.  Instead, it held that the counterparty had the right to
continue to use that license after rejection, notwithstanding the
fact that the debtor was relieved of its obligation to perform.
<u>Id.</u>

In contrast, in this case under the express terms of the
MSA, Caliber has no right to use the Interests and Dedications
<u>except</u> in its performance of the contracts.  (MSA at §§ 10.1 &
14.1)  Thus, this case is different from the facts in <u>Mission
Products</u> where the counterparty had the right to use the license
in its business and was not limited to using it in performance of

17

services to the debtor.  Furthermore, the Court noted that if the MSA is rejected, the Debtors will have no further obligation to pay Caliber.  <u>Mission Products</u>, 139 S.Ct. at 1658.  It is unlikely that Caliber will want to continue to perform the contracts when it will not be paid for that performance and, therefore, Caliber would have no further use for the Interests or Dedications.

The Court also concluded that the other cases cited by Caliber were equally distinguishable.  Those cases dealt with non-compete agreements, which not only are useful to the counterparty after the contract is breached but which typically are most valuable when the contract is breached.  Because Caliber only has an interest in the Dedications and Interests as necessary to perform the MSA, the Court concluded that Caliber would have no further interest in the Dedications and Interests after rejection/breach of the MSA by the Debtors.

### 3.   <u>Sale of Assets under Section 363</u>

In Count 5, the Debtors sought a declaratory judgment that they could sell their assets under section 363 free and clear of any interests that Caliber may have under the MSA.  Caliber disputed this contention.

The Court concluded that the Debtors could sell their assets free and clear of any interest Caliber had in them under two provisions of section 363(f).

a.    <u>Section 363(f)(4)</u>

Section 363(f)(4) of the Bankruptcy Code provides that

> [A debtor] may sell property . . . free and clear of
> any interest in such property of an entity other than
> the estate, . . . if -
>     . . .
>         (4) such interest is in bona fide dispute . . . .

11 U.S.C. § 363(f)(4).

The Court concluded that the parties did have a bona fide dispute with respect to Caliber's interests in the Debtors' property, including: (i) whether the Caliber contracts were properly terminated by the Debtors prior to the filing of their bankruptcy case; (ii) whether the Interests and Dedications are covenants that run with the land; (iii) whether the Interests and Dedications are binding after rejection of those contracts.

Even though the Court decided two of those issues in granting the Debtors' Motions for Summary Judgment, it recognized that Caliber may appeal that ruling and that any final resolution of that dispute could be years away.  The Court emphasized that the purpose of section 363(f)(4) is to allow a debtor to sell its assets without the necessity to wait until all disputes are fully resolved because, as with the Debtors in this case, a debtor is often in a precarious financial condition and any delay could erode the value of its assets and potential recovery for creditors.  <u>See, e.g.</u>, <u>Southland</u>, 623 B.R. at 99 ("The goal of § 363(f)(4) is to allow the sale of property subject to dispute so

that liquidation of the estate's assets need not be delayed while

such disputes are being litigated.") (quoting In re Daufuskie

Island Props., Inc., 431 B.R. 626, 645 (Bankr. D.S.C. 2010)).

Consequently, the Court concluded that the Debtor could sell

its assets free and clear of any interest that Caliber might have

in them pursuant to section 363(f)(4).

> b.   Section 363(f)(5)

Section 363(f)(5) of the Bankruptcy Code provides that

> [A debtor] may sell property . . . free and clear of
> any interest in such property of an entity other than
> the estate, . . . if -
>     . . .
>     (5) such entity could be compelled, in a legal or
> equitable proceeding, to accept money satisfaction of
> such interest.

11 U.S.C. § 363(f)(5).

Caliber argued that the MSA and North Dakota law provides it

with an equitable remedy for breach of the MSA, in addition to

any monetary remedy.  Caliber argued that, under the MSA and

North Dakota law, it alone has the right to elect whether to

accept an equitable remedy or a money satisfaction of its claims.

It contended that rejection of the MSA would not eliminate that

right.  Therefore, it argued it could not be compelled to accept

a money satisfaction of its claims.

The Court disagreed.  The Third Circuit has held that if the

holder of an equitable claim can be fully compensated with

monetary damages, then the debtor can sell its assets free of its

interest under section 363(f)(5).  <u>In re Trans World Airlines,</u>
<u>Inc.</u>, 322 F.3d 283, 290-91 (3d Cir. 2003) (holding that the
debtor could sell its assets free and clear of airline employees'
rights in travel vouchers and EEOC claims because those rights
could be valued and satisfied by money); <u>In re Continental</u>
<u>Airlines</u>, 125 F.3d 120, 133-36 (3d Cir. 1997) (holding that
debtor could sell its assets free and clear of airline pilots'
seniority integration rights because those rights could be valued
and satisfied by money).  The employees in the <u>TWA</u> case had
similarly argued that, in the absence of a bankruptcy case, they
could not be compelled to accept a money satisfaction of their
claims.  <u>TWA</u>, 322 F.3d at 290-91.  Nonetheless, the Third Circuit
held that their claims could be reduced to money and, therefore,
the debtor could sell its assets free and clear of those claims.
<u>Id.</u> at 291.

In this case, the Court concluded that the availability of
money damages under the MSA and state law demonstrated that
Caliber's equitable claim is compensable with an award of money
and that under Third Circuit precedent, the Debtors could sell
their assets free and clear of Caliber's interests under section
363(f)(5).  <u>TWA</u>, 322 F.3d at 290-91; <u>Continental Airlines</u>, 125
F.3d at 133-36.

Therefore, the Court concluded that the Debtors are entitled
to summary judgment on Counts 4 and 5 of the Complaint and

granted the Debtors' Second Motion for Summary Judgment.


Dated: June 1, 2021                    BY THE COURT:


                                       Mary F. Walrath
                                       United States Bankruptcy Judge

SERVICE LIST

Michael R. Nestor,
Kara Hammond Coyle,
Michael s. Neiburg,
Young Conaway Stargatt & Taylor, LLP
1000 N. King Street, Rodney Square
Wilmington, DE 19801
Counsel for the Debtors

Richard A. Levy, Esquire
Caroline A. Reckler, Esquire
Jonathan Gordon, Esquire
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Counsel for the Debtors

George A. Davis, Esquire
Nacif Taousse, Esquire
Alistair K. Fatheazam, Esquire
Jonathan J. Weichselbaum, Esquire
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
Counsel for the Debtors

Heather Lennox, Esquire
Robert S. Faxon, Esquire
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, Ohio 44114
Counsel for the Debtors

Edward Soto, Esquire
WEIL GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, Florida 33131
Counsel for Caliber Midstream Partners

Alfredo Perez, Esquire
WEIL GOTSHAL & MANGES LLP
700 Louisiana, Suite 1700
Houston, Texas 77002
Counsel for Caliber Midstream Partners

Philip Bentley, Esquire
Stephen Zide, Esquire
Caroline Gange, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Counsel for Caliber Midstream Partners

Curtis S. Miller (No. 4853)
Taylor M. Haga (No. 6549)
Nader A. Amer (No. 6635)
MORRIS, NICHOLS, ARSHT & TUNNELL, LLP
1201 N. Market St., 16th Floor
Wilmington, DE 19899-1347
Counsel for Caliber Midstream Partners